# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **ABUBAKAR ABDU GIZA**, *et al.*, | |
| Plaintiff, | |
| v. | Case No. 23-cv-1641 (CRC) |
| **ANTHONY J. BLINKEN**, U.S. Secretary of State, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

Plaintiffs in this case ("the Gizas") are a family of Nigerian citizens who are awaiting a decision on their applications for EB-5 visas, which are available to non-citizens who invest capital in a new commercial enterprise in the United States that creates at least ten full-time employment positions. The United States Citizenship and Immigration Services ("USCIS") approved the Gizas' Form I-526 petition to qualify as an "approved investor" in 2022 and submitted their applications to the United States Consulate General in Lagos, Nigeria for further processing. Following an interview at the consulate in February 2023, the Gizas' applications were placed into so-called "administrative processing" and have not yet been approved. Several months after the interview, the Gizas filed this lawsuit against Secretary of State Antony J. Blinken and U.S. Consul General to Nigeria Will Stevens in their official capacities. The suit contends that the defendants have unlawfully delayed final adjudication of the Gizas' applications and asks the Court to order the government to act more swiftly. The defendants have moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. Finding that a decision on the Gizas' visa applications has not been unreasonably delayed, the Court will grant the motion and dismiss the case.

## I.  Background

Abubakar Abdu Giza and Kande Hannatu Abuakar are citizens and residents of Nigeria, where they have raised three children: Abba Abubakar Giza, Zainab Abubakar Giza, and S.A.G. Compl. ¶ 10.  Their two eldest children, Abba and Zainab, both studied and worked in the United States at Texas Southern University, where the youngest child, S.A.G., was admitted last year. Id. ¶¶ 11–14.  Currently, the whole family lives together in in Abuja, Nigeria.  Id.

In 2015, Mr. Giza filed a Form I-526 petition with USCIS for classification as an "approved investor" eligible for an EB-5 visa, which are available to individuals who make a significant capital investment in a new commercial enterprise that "will benefit the United States economy by creating full-time employment for not fewer than 10 United States citizens, United States nationals," or certain other residents.  8 U.S.C. § 1153(b)(5)(A)(ii); Compl. ¶ 35.  USCIS approved the Form I-526 petition in June 2022 and forwarded the Gizas' visa applications to the State Department's National Visa Center.  Compl. ¶¶ 36–37.  Following the submission of additional documentation, the National Visa Center sent their applications to the United States Consulate General in Lagos, Nigeria for further processing and an immigrant interview.  Id. ¶ 38; see also 8 U.S.C. §§ 1186b(a)(1), 1201–02 (outlining the system for "consular processing").

The Gizas were interviewed together at the consulate in Lagos on February 15, 2023, with Abba and Zainab flying from Texas to Nigeria for the interview.  Compl. ¶¶ 41–42.  There, the interviewing officer collected the Gizas' passports and reportedly said that their applications "would be approved" and their visas issued "within four weeks."  Id. ¶¶ 44–45.  That did not come to pass, however.  Instead, after the interview, Mr. Giza's visa application was designated as "refused" and placed into "administrative processing" pursuant to 8 U.S.C. § 1201(g).  See Mot. Dismiss at 7, 12; Opp'n at 4; U.S. Dep't of State, Administrative Processing Information

(last visited July 10, 2024), https://perma.cc/E3DB-UVWM.[1]  Because the other family

members' visa requests are predicated on Mr. Giza's investments in the United States, their

applications also cannot proceed until he is judged eligible for a visa.  See June 21, 2024 Status

Report.  The Gizas say they have not received any requests for further documentation since their

interview and have been informed by the Consulate General that it does "not know the exact time

frame as to when" any visa will be issued.  Opp'n at 3; Compl. ¶¶ 47–49.

Four months after the interview, in June 2023, the Gizas filed this action against U.S.

Secretary of State Antony Blinken and U.S. Consul General to Nigeria Will Stevens in their

official capacities.  Their complaint alleges that the government has unreasonably delayed

processing their applications, in violation of the Administrative Procedure Act ("APA"), and

requests an order to expedite a final decision.  The defendants have moved to dismiss the

complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)

and failure to state a claim under Rule 12(b)(6).

## II.    Legal Standards

When analyzing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court

"must treat the complaint's factual allegations as true and must grant plaintiff the benefit of all

inferences that can be derived from the facts alleged."  Giliana v. Blinken, 596 F. Supp. 3d 13,

---

[1]  The government represented in its motion to dismiss that, according to "public
records," the consular officer placed Mr. Giza's visa application in administrative processing on
March 20, 2023.  Mot. Dismiss at 8.  In a status report filed several months later, however, the
government said that "Mr. Giza's application is currently undergoing administrative processing"
and that he was "informed of the refusal of his application on February 15, 2023"—the day of
the interview.  See June 21, 2024 Status Report.  This slight discrepancy is immaterial to the
outcome of this case though.  More important is the fact that the Department of State's website
indicates that Mr. Giza's application is still working its way through administrative processing.
See Consular Elec. Application Ctr., Visa Status Check,
https://ceac.state.gov/CEACStatTracker/Status.aspx (application "LGS2022717016").

17 (D.D.C. 2022) (quoting Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000)). However, a court need not accept inferences drawn by the plaintiff that are unsupported by facts alleged in the complaint, nor must the Court accept a plaintiff's legal conclusions as true. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992). But on a 12(b)(6) challenge, it is the defendant who bears the burden, and "dismissal is inappropriate unless the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Browning, 292 F.3d at 242 (internal quotation marks omitted).

### III. Analysis

The government advances four arguments in support of its motion to dismiss: (1) the Secretary of State is not a proper party because he cannot redress the Gizas' asserted injuries; (2) the doctrine of consular nonreviewability bars judicial review of the delay in processing their visa applications; (3) the complaint fails to identify a discrete, non-discretionary duty on the part of the defendants; and (4) the delay has not been unreasonable. Though the Court is unpersuaded by the government's first three contentions, it agrees that the complaint fails to state a plausible claim of unreasonable delay.

#### A. Redressability

The government first claims that the Secretary of State must be dismissed because he has "no role in adjudicating the [visa] request." Mot. Dismiss at 10. Although not cast in terms of Article III standing, the Court understands this argument to be a redressability challenge. For reasons that have already been well ventilated in prior cases, however, the Court finds that the Secretary is a proper defendant in this action.

As it has in the past, the government points to <u>Baan Rao Thai Restaurant v. Pompeo</u>, where the D.C. Circuit considered a final visa determination and held that the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 <u>et seq.</u>, "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'"  985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting <u>Saavedra Bruno v. Albright</u>, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).  "Control over a consular officer's visa *determinations*," however, "is not the same as control over the *timing* by which the consular officer considers the applications presented to her."  <u>Al-Gharawy v. U.S. Dep't of Homeland Sec.</u>, 617 F. Supp. 3d 1, 10 (D.D.C. 2022) (emphasis in original).  Observing this important distinction, "[c]ourts in this jurisdiction [have] routinely reject[ed] the same argument that Defendants have raised here" and held that the Secretary of State is a proper defendant in unlawful-delay cases involving foreign consulates.  <u>Fakhimi v. Dep't of State</u>, No. 23-cv-1127 (CKK), 2023 WL 6976073, at *6 (D.D.C. Oct. 23, 2023); <u>see also, e.g.</u>, <u>Lee v. Blinken</u>, No. 23-cv-1783 (DLF), 2024 WL 639635, at *3 (D.D.C. Feb. 15, 2024); <u>Ramirez v. Blinken</u>, 594 F. Supp. 3d 76, 90 (D.D.C. 2022); <u>Babaei v. United States Dep't of State</u>, No. 23-cv-1244 (TJK), 2024 WL 1178453, at *4 (D.D.C. Mar. 19, 2024).  Rightly so.  Because the Department of State is tasked with processing visa applications, and because consular nonreviewability does not stop the Secretary of State from exerting control over the timing of visa adjudications, a judicial order directing Secretary Blinken to process the Gizas' applications more swiftly would redress their claimed injuries.  The Gizas thus have standing to pursue their unlawful-delay claim against the Secretary.

B.  Consular Non-Reviewability

The Court also rejects the government's contention that this lawsuit is barred by the doctrine of consular nonreviewability, which "shields a consular official's decision to issue or withhold a visa from judicial review."  Baan Rao, 985 F.3d at 1024.

Numerous courts in this district, including this one, have explained that the doctrine of consular nonreviewability precludes review only of "final visa determinations" and "does not apply to challenges regarding decisions that are not yet final."  Giliana, 596 F. Supp. 3d at 18 (quoting Joorabi v. Pompeo, 464 F. Supp. 3d 93, 100 (D.D.C. 2020)).  But applications in administrative processing "have not been finally refused."  Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry, 168 F. Supp. 3d 268, 292 (D.D.C. 2016).  "Administrative processing generally means that additional information is needed before a consular officer can determine whether an applicant is qualified for the visa for which she has applied."  Giliana, 596 F. Supp. 3d at 18.  "Accordingly, courts have consistently held that when an application is still undergoing administrative processing, even where a refusal has been relayed, the decision is not final, and thus claims alleging unreasonable delay while a case remains suspended in 'administrative processing' are not barred by the doctrine of consular nonreviewability."  Id. (quotation marks omitted).  That is the case here.  The Gizas' applications are still under administrative processing to determine whether they are eligible for EB-5 visas. So long as their applications are being reviewed, there has been no final visa determination— even if the Department of State's website labels the application as "refused."  See id.; see also Sawahreh v. United States Dep't of State, 630 F. Supp. 3d 155, 160 (D.D.C. 2022) ("This Court again joins others in this district in holding that Defendants cannot 'unsubscribe' from judicial

review of cases in administrative processing for unreasonable delay by simply changing their website.").  Holding otherwise would elevate semantics over substance.

The government again turns to <u>Baan Rao</u>, arguing that this D.C. Circuit decision conflicts with the long line of district court cases in this jurisdiction finding delays in administrative processing to be reviewable.  But this argument stretches <u>Baan Rao</u>'s holding too far.  "The Circuit there . . . addressed a challenge to final visa denials and not to processing delays." <u>Sawahreh</u>, 630 F. Supp. 3d at 160.  It unsurprisingly did not mention "administrative processing" at all, or otherwise speak to this issue.  As a result, as this Court and others have held, "nothing in <u>Baan Rao</u> even hints that it upends the many cases holding that this doctrine does not apply to unreasonable delay claims for visa applications undergoing administrative processing."  <u>Giliana</u>, 596 F. Supp. 3d at 19; <u>accord</u> <u>Al-Gharawy</u>, 617 F. Supp. 3d at 15.

To be sure, one fellow court in this district recently broke ranks and held that consular nonreviewability applies to cases in administrative processing because, in its view, courts lack authority to order "additional processing of an already refused visa application" or demand a "reexamination" of the rejected application.  <u>Yaghoubnezhad v. Stufft</u>, No. 23-cv-03094 (TNM), 2024 WL 2077551, at *11 (D.D.C. May 9, 2024).  Respectfully, this Court sees things differently.  Plaintiffs in administrative processing have not received final word on their visa applications—as evidenced, here, by the fact that the consulate is holding onto the Gizas' passports as it continues to assess their eligibility.  The Gizas, like others stuck in administrative processing, are therefore not asking for a reevaluation of any determination.  They are merely requesting that the government comply with its duties under the INA by rendering a final decision on their applications in a timely manner.  Evaluating this request does not call on courts to second guess the substance of any determination.  <u>See id.</u> at *11 ("Because consular officers

have validly refused Plaintiffs' visas, the Court cannot order further review or adjudication of those refusals without requiring consular officers to examine their *substance*." (emphasis in original)). At most, the court is being asked to compel the government to end the administrative limbo by issuing a final "up or down" vote on an applicant's visa. Al-Gharawy, 617 F. Supp. 3d at 13. Consular nonreviewability has no bite in this context.

"[T]he doctrine of consular nonreviewability is not triggered until a consular officer has made a *decision* with respect to a particular visa application . . . because it protects the prerogative of the political branches to regulate the manner in which aliens may enter the United States." Nine Iraqi Allies, 168 F. Supp. 3d at 290 (emphasis in original) (citing Saavedra Bruno, 197 F.3d at 1159). "When the Government simply declines to provide a decision in the manner provided by Congress, it is not exercising its prerogative to grant or deny applications but failing to act at all." Id. at 290–91. Because the government has not yet made a final decision on the Gizas' application, the doctrine of consular nonreviewability poses no bar to the Court's review.[2]

C. Discrete Action Requirement

Having assured itself of its jurisdiction to hear this case, the Court turns to government's contention that the complaint does not allege a viable claim for unreasonable delay under the APA. "To state a claim for unreasonable delay, [a plaintiff] must first allege that the agency 'failed to take a discrete agency action that it is required to take,' and, second, that the delay was

---

[2] In a supplemental filing, the government argues that the D.C. Circuit's recent unpublished opinion in Karimova v. Abate, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam) "rejected the notion that a refusal under INA Section 221(g) is not a 'final' refusal." See Notice of Supp. Auth., ECF No. 14, at 2 (quoting Karimova, 2024 WL 3517852, at *2). Although Karimova noted that such a refusal "conclude[s]" a matter within the meaning of 5 U.S.C. § 555(b), 2024 WL 3517852, at *4, the D.C. Circuit expressly declined to decide whether the principle of consular nonreviewability applies to challenges based on the timing, rather than the substance, of visa decisions. Id. at *6. Karimova thus does not affect the Court's conclusion that consular nonreviewability does not bar its review.

unreasonable[.]"  Da Costa v. Immigr. Inv. Program Off., 80 F.4th 330, 340 (D.C. Cir. 2023) (internal citations omitted) (quoting Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004)). On the first requirement, the government contends that the Gizas "cannot identify a clear, non-discretionary duty for a consular officer to readjudicate any visa application that has already been refused."  Mot. Dismiss at 15.

Because the Gizas "fail[] to allege an unreasonable delay as a matter of law, the Court will assume, without deciding, that the State Department has a non-discretionary, discrete duty to adjudicate [their] visa application[s]."  See Baygan v. Blinken, No. 23-CV-2840 (JDB), 2024 WL 3723714, at *5 (D.D.C. Aug. 8, 2024) (citing Rostamnia v. Blinken, No. 23-CV-1638 (RDM), 2024 WL 1328462, at *5 (D.D.C. Mar. 28, 2024)).  The Court is mindful of Karimova, which held that Section 555(b) of the APA alone was too "general[] and indistinct[]" to establish such a "crystal-clear legal duty" on behalf of the government.  Id. at *3–4 (quoting In re Ctr. for Biological Diversity, 53 F.4th 665, 670 (D.C. Cir. 2022)).  The Gizas, however, also invoke more specific provisions in the INA—namely, 8 U.S.C. §§ 1202(b) and 1153(e), Compl. ¶ 59—and its regulations—22 C.F.R. § 42.81(b) and (c), Opp'n 20–21— as the source of the duty "to either issue . . . a visa or refuse [the] application, without then also placing it in administrative processing,"  Karimova, 2024 WL 3517852 at *3.  The Court need not decide whether the INA or its regulations impose this duty because, either way, the Gizas have not plausibly alleged that the delay in adjudicating their visa applications is unreasonable.  See Baygan, 2024 WL 3723714, at *5.

D.  Unreasonable Delay

The Gizas' claim fizzles because they have not plausibly alleged that the delay in the processing of their visa applications is unreasonable.  To evaluate this claim, the Court applies

the familiar six-factor test established by <u>Telecommunications Research & Action Center v. FCC</u> ("<u>TRAC</u>"), 750 F.2d 70, 79–80 (D.C. Cir. 1984). Under the <u>TRAC</u> test, courts must balance the following considerations:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

<u>In re United Mine Workers of Am. Int'l Union</u>, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting <u>TRAC</u>, 750 F.2d at 80 (citations omitted)). Not all six factors are afforded equal weight. The "most important" factors "are factor one—whether the agency's timing of adjudications follows a 'rule of reason'—and factor four—the effect that an order 'expediting delayed action' would have on 'agency activities of a higher or competing priority.'" <u>Da Costa</u>, 80 F.4th at 340 (quoting <u>TRAC</u>, 750 F.2d at 80).

"In analyzing a motion to dismiss, courts apply the <u>TRAC</u> factors not to determine whether there has been an unreasonable delay, but to determine if a plaintiff's complaint alleged facts sufficient to state a plausible claim for unreasonable administrative delay." <u>Varghese v.</u>

Blinken, No. 21-cv-2597 (CRC), 2022 WL 3016741, at *4 (D.D.C. July 29, 2022) (cleaned up). While the Gizas object that resolving this case based on the pleadings is inappropriate, see Opp'n at 22–23, "[t]here is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage," Da Costa v. Immigr. Inv'r Program Off., 643 F. Supp. 3d 1, 12 (D.D.C. 2022), aff'd, 80 F.4th 330 (D.C. Cir. 2023). "If a 'record contains enough facts to evaluate the TRAC factors' at that point, then a Court may appropriately decide to do just that." Id. (quoting Sarlak v. Pompeo, No. 20-cv-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020)). Applying the TRAC factors here, the Court finds that the complaint does not plausibly allege an unreasonable delay.

1. *TRAC Factors One and Two*

The Court begins with factors one and two: "(1) whether the response time is governed by a rule of reason, as informed by (2) any congressional timetable." Giliana, 596 F. Supp. 3d at 20. The first factor is "most important" to the TRAC analysis, In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008), though the two are "typically considered together," Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020). Where, as here, Congress has not prescribed a statutory deadline, courts "turn to case law as a guide." Id. at 318. Although "[t]here is no *per se* rule as to how long is too long' to wait for agency action," In re Am. Rivers & Idaho Rivers United, 372 F.3d 413, 419 (D.C. Cir. 2004) (quotation marks omitted)), "courts have generally found that immigration delays in excess of five, six, [or] seven years are unreasonable, while those between three to five years are often not unreasonable," Sarlak, 2020 WL 3082018, at *6 (citation omitted) (collecting cases). In assessing the length of a delay, courts "calculate the delay 'from the last Government action to the issuance of the opinion.'" Varghese, 2022 WL

3016741, at *5 (quoting <u>Mahmood v. U.S. Dep't of Homeland Sec.</u>, No. 21-cv-1262, 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021)). Taken together, these factors favor the government.

The seventeen-month delay in processing the Gizas' petitions since their interview in February 2023 falls comfortably within the range that courts in this district have held not to be unreasonable. In fact, this delay is in line with many other cases finding no unreasonable delay in this exact context where an applicant has been placed in administrative processing after sitting for an interview at a foreign consulate. <u>See, e.g.</u>, <u>Dastagir v. Blinken</u>, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (finding 29 months of "administrative processing" not unreasonable); <u>Sheibani v. Garland</u>, No. 23-cv-2773 (TJK), 2024 WL 3043156, at *4 (D.D.C. June 18, 2024) (same for 24 months); <u>Pourabdollah v. Blinken</u>, No. 23-cv-1603 (DLF), 2024 WL 474523, at *7 (D.D.C. Feb. 7, 2024) (20 months); <u>Sharifymoghaddam v. Blinken</u>, No. 23-cv-1472-RCL, 2024 WL 939991, at *5 (D.D.C. Mar. 5, 2024) (15 months). Using this "case law as a guide," then, these two important <u>TRAC</u> factors weigh in the government's favor. <u>Sarlak</u>, 2020 WL 3082018, at *6.

The Gizas emphasize that here, unlike in some other cases, the government has not proffered any methodology that it employs to organize its queue of pending visa applications. <u>See</u> Opp'n at 25–26. Courts have held that the ability to identify a sensible ordering rule—such as a first-in, first-out method—all but clinches the case for the government. <u>See, e.g.</u>, <u>Quiros v. Amador</u>, No. 21-cv-02433 (CKK), 2023 WL 4364161, at *5 (D.D.C. July 6, 2023) ("In general, courts in this jurisdiction have regularly found that the Government applies a 'rule of reason' to the review of visa petitions by adjudicating applications in the order they were filed."); <u>Da Costa</u>, 80 F.4th at 340–43. Without an indication of an ordering rule here, this case is admittedly more difficult to resolve at the motion-to-dismiss stage. Even absent such evidence, however, courts in this jurisdiction consistently have held that pointing to wait times of this length is not enough

to state a *plausible* claim of unreasonable delay.  <u>See, e.g.</u>, <u>Lee</u>, 2024 WL 639635, at *5–6;

<u>Sharifymoghaddam</u>, 2024 WL 939991, at *5.  For good reason.  In the complex system of visa

processing, a seventeen-month delay does not itself indicate that the government is dragging its

feet and, as a result, allegations of unlawful delay predicated on this fact do not clear the hurdle

separating the "plausible" from the merely "conceivable."  <u>Bell Atlantic Corp. v. Twombly</u>, 550

U.S. 544, 570 (2007).[3]

     *2.  <u>TRAC</u> Factor Four*

The fourth factor examines "the effect of expediting delayed action on agency activities

of a higher or competing priority," <u>TRAC</u>, 750 F.2d at 80, and "carries the greatest weight in

many cases," <u>Milligan</u>, 502 F. Supp. 3d at 319.  In fact, "[t]his Circuit has refused to grant relief,

even [when] all the other factors considered in <u>TRAC</u> favored it, where a judicial order putting

the petitioner at the head of the queue would simply move all others back one space and produce

no net gain."  <u>Milligan</u>, 502 F. Supp. 3d at 319 (cleaned up) (quoting <u>Mashpee Wampanoag</u>

<u>Tribal Council, Inc. v. Norton</u>, 336 F.3d 1094, 1100 (D.C. Cir. 2003)).  The Gizas seek just the

sort of reordering that courts in this jurisdiction have routinely rebuffed.

The Gizas insist they are "not seeking relief that would simply 'reorder' a queue of

applicants seeking adjudication" because "the Court does not have before it any evidence

indicating whether such a reordering would occur here."  Opp'n at 27.  But it is readily apparent

that "[c]onsular processing capacity is presently a zero-sum game, so granting them relief would

necessarily mean additional delays for other applicants—many of whom undoubtedly face

_____

[3] The consulate officer's reported forecast that the visa applications "would be approved" and "issued within four weeks" also does not get the Gizas over the hump.  Compl. ¶¶ 44–45. The Gizas do not expressly contend that the government was bound by this prediction, and any such argument would fall flat because this alleged statement did not tie the government's hands or estop it from doing further due diligence before issuing the requested visas.

hardships of their own." Lee, 2024 WL 639635, at *6 (quotation marks omitted). "Admittedly, the effect of prioritizing one visa application may prove minimal, but the accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." Id. (same). And where, as here, "[t]he agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way," there is "no basis for reordering agency priorities." In re Barr Lab'ys, Inc., 930 F.2d 72, 76 (D.C. Cir. 1991); see also Arab v. Blinken, 600 F. Supp. 3d 59, 71 (D.D.C. 2022) ("[D]eference must be given to the State Department's priority-setting and resource-allocation decisions." (collecting cases)).

3. *TRAC Factors Three and Five*

TRAC factors three and five—the delay's impact on "human health and welfare" and the "interests prejudiced by delay"—tip slightly in favor of the Gizas. 750 F.2d at 80. In particular, the Gizas plausibly allege that the delay has negatively impacted their three children, forcing them to defer their education and potentially lowering their career trajectories. See Opp'n at 27. "Taking these alleged adverse effects as true, as the Court must at this stage, the plaintiffs are in a worse position than visa applicants who merely claim that their lives have been put 'on hold' by the visa delay." Pourabdollah, 2024 WL 474523, at *8 (cleaned up). At the same time, though, this factor "is only slightly beneficial to plaintiffs . . . because the alleged adverse effects are relatively minor compared to other employment visa applicants." Sharifymoghaddam, 2024 WL 939991, at *6 (citing Da Costa, 643 F. Supp. 3d at 15, noting that the delay there forced plaintiffs to remain in areas where they "fear[ed] for their lives each time they venture[d] out their front door" and where "access to drinking water, electricity, and other public services [was] substantially limited").

###### 4. *TRAC* Factor Six

The last <u>TRAC</u> factor is neutral because the Gizas do not allege any bad faith on the part of the government and "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." 750 F.2d at 80 (internal quotation marks omitted).

\*      \*      \*

Taking each of the <u>TRAC</u> factors into consideration, the Court finds that the complaint does not plausibly allege an unreasonable delay. While understanding of the Gizas' frustration as they wait for final word on their visas, "the Court is also mindful that many others face similarly difficult circumstances as they await adjudication of their visa applications." <u>Mohammad v. Blinken</u>, 548 F. Supp. 3d 159, 168–69 (D.D.C. 2021) (quotation marks omitted). As a result, these considerations "are not enough to overcome the other factors that weigh strongly in the Government's favor." <u>Palakuru v. Renaud</u>, 521 F. Supp. 3d 46, 53 (D.D.C. 2021).

## IV. Conclusion

For these reasons, the Court will dismiss the complaint and the case in a separate order that accompanies this Memorandum Opinion.

**SO ORDERED**.

 

 

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>August 27, 2024</u>